# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY WILLIAMS<br>1128 Saint Ann Street<br>Scranton, PA 18504 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | No.: _____ |
| v. | : <br> : | |
| LACKAWANNA COUNTY<br>o/a LACKAWANNA COUNTY PRISON<br>1371 N. Washington Avenue<br>Scranton, PA 18509<br>   and<br>KRISTA PURVIS<br>1371 N. Washington Avenue<br>Scranton, PA 18509<br>   and<br>TIM BETTI<br>1371 N. Washington Avenue<br>Scranton, PA 18509<br>   and<br>JUSTIN MACGREGOR<br>123 Wyoming Avenue, 2nd Floor<br>Scranton, PA 18503<br>   and<br>RICHARD JONES<br>123 Wyoming Avenue, 2nd Floor<br>Scranton, PA 18503<br>   and<br>KERI SAVAGE, ESQ.<br>123 Wyoming Avenue, 2nd Floor<br>Scranton, PA 18503 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | |

## CIVIL ACTION COMPLAINT

Gregory Williams (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Lackawanna County o/a Lackawanna County Prison, Krista Purvis, Tim Betti, Justin MacGregor, Richard Jones, and Keri Savage, Esq. (hereinafter collectively referred to as "Defendants") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), and the Pennsylvania Human Relations Act ("PHRA").[1]  As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

3. This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes.  He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue-letter under the ADA.  Plaintiff's PHRA claims however will mirror identically his federal claims under the ADA.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5. Plaintiff is proceeding herein (in part) under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the above caption.

8. The County of Lackawanna, is a sovereign entity of the United States of America, with the enabling power and authority to establish entities and departments which serve to operate and manage local and state-wide governmental concerns. The Lackawanna County Prison (hereinafter individually referred to as "Defendant LCP") is an agency of Defendant County and is a minimum-security detention center located at 1371 N Washington Ave, Scranton, PA 18509. Plaintiff was hired through and worked out of this address.

9. Defendant Krista Purvis (hereinafter individually referred to as "Defendant Purvis") was at all relevant times Deputy Warden status within Defendant LCP, was within Plaintiff's chain of command, and effectuated decisions with respect to the terms and conditions of Plaintiff's employment.

10. Defendant Tim Betti (hereinafter individually referred to as "Defendant Betti") was at all relevant times Warden status within Defendant LCP, was within Plaintiff's chain of

command, and effectuated decisions with respect to the terms and conditions of Plaintiff's employment.

11. Defendant Justin MacGregor (hereinafter individually referred to as "Defendant MacGregor") was at all relevant times Human Relations ("HR") Deputy Director status for Lackawanna County (including Defendant LCP), and effectuated decisions with respect to the terms and conditions of Plaintiff's employment, as well as a decision maker with regard to Plaintiff's leave requests, accommodations, and disability/discrimination complaints.

12. Defendant Richard Jones (hereinafter individually referred to as "Defendant Jones") was at all relevant times Deputy Director Risk Management status for Lackawanna County (including Defendant LCP), and effectuated decisions with respect to the terms and conditions of Plaintiff's employment, as well as a decision maker with regard to Plaintiff's work place injuries and worker's compensation claims.

13. Defendant Keri Savage, Esq. (hereinafter individually referred to as "Defendant Savage") was at all relevant times HR Representative status for Lackawanna County (including Defendant LCP), and effectuated decisions with respect to the terms and conditions of Plaintiff's employment, as well as a decision maker with regard to Plaintiff's termination..

14. At all times relevant herein, Defendants acted through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

15. At all relevant times, all individual Defendants were acting under the color of state law, in concert and in agreement with one another in a concerted effort to discriminate and/or retaliate against Plaintiff

**FACTUAL BACKGROUND**

16. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

17. Plaintiff was hired by Defendant LCP to work within its prison system in or about May of 2017, first as a Corrections Officer and then as a Correctional Counselor.

18. While employed with Defendants, relevant management included but was not limited to: Plaintiff's immediate supervisor Defendant Purvis; Defendant Purvis' Supervisor, Defendant Betti; Defendant MacGregor; Defendant Jones; and Defendant Savage.

19. Plaintiff has and continues to suffer from serious, long-term and permanent health conditions, including but not limited to injuries he had suffered in a work-related fall in or about January of 2019.

20. Despite these health conditions and limitations, Plaintiff was still able to perform the essential functions of his position well. However, Plaintiff did require some reasonable accommodations (discussed further *infra*).

21. For example, since the onset of Plaintiff's aforesaid work-related injuries/health conditions, he has required various medical leave(s), therapy, treatment, and workplace accommodations (through some restrictions at times).

22. In or about late 2020, Plaintiff proceeded with worker's compensation legal claims to ensure his ongoing medical bills were paid and/or reimbursed because such coverage had ceased without explanation, prompting Plaintiff to initiate legal claims against Defendants to protect himself on a going-forward basis.

23. Thereafter, Plaintiff resumed receipt of worker's compensation coverage to obtain adequate and continuing medical treatment.

24. One of Plaintiff's (numerous) work-related injuries/health conditions includes chronic migraines, for which Plaintiff receives injections as a form of treatment to help mitigate such complications.

25. There was tremendous animosity towards Plaintiff, however, by Defendants' management wherein they: (a) were hostile towards Plaintiff; (b) overly scrutinized him; and (c) admonished him for medical needs or taking time off from work for medical treatment (without ever even giving him the benefit(s) of FMLA leave).

26. In fact, while Plaintiff had been taking and/or requesting intermittent and/or block time off from work to care for and treat his aforesaid health conditions, Defendants' management never informed Plaintiff of his individualized FMLA rights (as required by the FMLA) or that his aforesaid intermittent and/or block leave was FMLA-qualifying, and failed to designate such leave time as same. Therefore, Defendants failed to follow proper notice, designation, and informational regulations of the FMLA.

27. As a result of the aforesaid instances of hostility and animosity, Plaintiff expressed concerns of mistreatment on account of his health and medical leave needs while employed, including that he was exercising his legal rights to intermittent time off from work and other medical accommodations, but his concerned were ignored.

28. Instead, Plaintiff was subjected to increased hostility and animosity by Defendants' management. For example, Plaintiff had to attend medical appointments several times per week, and Defendants' management expressed outrage that his medical treatment would interfere with his work schedule (despite this constituting ADA and FMLA-qualifying protected leave).

29. In or about mid-August of 2021, Plaintiff came to work with health complications (primarily due to serious head pressure and a migraine) and requested permission to leave for part

6

of the day, as Plaintiff explained he was feeling horribly. Plaintiff left work a few hours early with the consent of Defendants' management.

30. Following his early departure from work because of his aforesaid health conditions (*see* Paragraph 29, *supra*), as a precaution (even if not necessary), Plaintiff was COVID tested, and the test was negative.

31. Defendants' management directed Plaintiff to undergo a second COVID test; and as always, Plaintiff complied with supervisory directives.

32. Plaintiff's aforesaid second COVID test was negative.

33. Plaintiff resumed working on or about August 13, 2021, and worked for a few weeks without issue.

34. Nonetheless, without warning in or about September of 2020: (1) allegations were lodged that Plaintiff had worked with COVID symptoms on August 10th or August 11th of 2021; and (2) was facing termination for conjured up allegations of misconduct, dishonesty, breach of security, failure to obey a supervisory officer, ***and other*** exaggerated reasons of a cause-based termination – despite that the aforementioned dates (August 10th or August 11th of 2021) were the exact days in which he was confirmed negative for the COVID virus (twice).

35. Plaintiff was thereafter threatened with termination unless he entered into an unsolicited and unprovoked settlement agreement waiving all of his legal claims and entitlements to worker's compensation.$^{2}$

---

$^{2}$This is well-established evidence of discrimination, retaliation, and pretext. *See Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at \*\*14-15 (E.D. Pa. 2013) (an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011) (finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed

7

36. Defendants' unsolicited offer of settlement conditioned on Plaintiff giving up medical rights to continued worker's compensation illustrated Defendants' tremendous frustration with Plaintiff's work-related injuries/health conditions and medical costs.

37. After objecting to any type of settlement agreement just to retain his job (along with having discipline on file), Plaintiff was given set timeframes to reconsider his objection to entering a waiver of his worker's compensation rights in exchange for continued employment.

38. Plaintiff, however, continued to object to entering a waiver of his worker's compensation rights in exchange for continued employment, as his health and need for treatment are very serious. In fact, Plaintiff was shocked that discipline or termination would be leveraged as a basis to avoid the medical expenses (or future accommodation needs) of an employee.

39. Thereafter, on or about October 22, 2021, Plaintiff was abruptly terminated from his employment with Defendants for completely absurd and pretextual reasons – that he had purportedly exhibited some COVID symptoms – despite having obtained 2 negative tests for COVID.

40. Defendants elected to characterize this negligible and exaggerated rationale for Plaintiff's termination as numerous violations of policies or collective bargaining procedures (which was patently false).[3]

41. Therefore, Plaintiff believes and avers that he was subjected to a hostile work environment and terminated because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations (which constitutes illegal retaliation); and (4)

---

by Fed.R.Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc*., 2012 WL 5268365, at *2 (N.D. Ind. 2012) (holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

[3] Notably, Defendants even referenced or cited in terminating Plaintiff to outdated policies (that were not even in place as of Plaintiff's alleged actions).

his expressed concerns of unfair treatment as a result of his health conditions and requested accommodations.

## COUNT I
## Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Hostile Work Environment
-Against Defendant LCP Only-

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

44. Plaintiff kept Defendant LCP's management informed of his serious medical conditions and need for medical treatment and other accommodations.

45. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well; however, Plaintiff did require reasonable medical accommodations at times.

46. Plaintiff requested reasonable accommodations such as intermittent time off for doctor's appointments and to care for and treat Plaintiff's serious health conditions.

47. Plaintiff was treated with hostility and animosity by Defendant LCP's management because of his aforementioned disabilities and need for accommodations.

48. Plaintiff objected to/complained of Defendant LPC's harassing and discriminatory behavior, but his concerns were ignored, and their retaliatory and discriminatory harassment continued.

49. Plaintiff was terminated from his employment in close proximity to his requests for/utilization of reasonable accommodations and his objections to/complaints of discrimination and retaliation.

50. Plaintiff believes and therefore avers that he was subjected to a hostile work environment and terminated because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations (which constitutes illegal retaliation); and (4) his expressed concerns of unfair treatment as a result of his health conditions and requested accommodations.

51. These actions as aforesaid constitute violations of the ADA.

## COUNT II
## Violations of the Family and Medical Leave Act ("FMLA")
### ([1] Retaliation & [2] Interference)
### -Against All Defendants-

52. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

54. Plaintiff requested leave from Defendants with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

55. Plaintiff had at least 1,250 hours of service with Defendants during his last full year of employment.

56. Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

57. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

58. Defendants committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-

qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) failing to inform Plaintiff of his individualized FMLA rights, which constitutes a failure to follow proper notice, designation, and information regulations of the FMLA; (4) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; (5) making negative comments and/or taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA; and (6) failing to designate Plaintiff's requests for intermittent and/or block time off for his health conditions as FMLA-qualifying or FMLA protected leave.

59. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  March 31, 2022